UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:_____ 5/28/2020

---

Lisa Snead,

                          Plaintiff,

            –v–

City of New York, *et al.*,

                          Defendants.

---

16-cv-9528 (AJN)

OPINION &
ORDER

ALISON J. NATHAN, District Judge:

Plaintiff Lisa Snead brings this action against the City of New York, three New York Police Department Officers, and seven unnamed defendants. In 2015, Snead was arrested in the Bronx on three misdemeanor charges. She now alleges that Defendants violated the federal Constitution and New York City law in the course of her stop, arrest, and state criminal proceedings. The parties have cross-moved for partial summary judgment on certain claims as to certain defendants. For the reasons given below, the Court DENIES Snead's motion for partial summary judgment, and the Court GRANTS Defendants' motion in part and DENIES it in part.

## I.      BACKGROUND

### A.  Snead Is Arrested and Charged with Three Misdemeanors

The parties contest many of the facts that give rise to this litigation. In this section, the Court lays out the undisputed facts. Lisa Snead is an African American woman who works for the New York City Transit Authority as a bus driver. Snead Dep. 104:10-23. On the night of June 24, 2015, Snead was walking along 145th Street in Manhattan with a coworker. Snead Dep. 22:3-12. Police officers in a vehicle observed Snead and believed she possessed an open alcoholic beverage. Snead Dep. 23:12-14. At least one officer, Gregory LoBianco, exited the

1

police car and approached Snead.  Snead and LoBianco then had a discussion, and several pedestrians stopped to observe their interaction.  LoBianco eventually placed Snead under arrest.

Snead was then transported to a local precinct and held there for about eighteen hours. Pl. Response to Def. Statement, Dkt. No. 138, ¶ 12; Def. Reply to Pl. Ctr. Statement, Dkt. No. 139, ¶ 2.  The next day, Officer LoBianco signed a criminal complaint "attesting to the circumstances of" Snead's arrest.  Def. Reply to Pl. Ctr. Statement ¶ 2.  The District Attorney charged Snead with three misdemeanors: resisting arrest, consumption of alcohol in a public place, and disorderly conduct.  Harvis Decl., Ex. 2.  Snead was arraigned in New York County Criminal Court, and her criminal proceedings continued over the next fifteen months.  On September 21, 2016, the state court dismissed all charges against Snead.  Harvis Decl., Ex. 8.

### B.  Procedural History

Snead filed this lawsuit on December 9, 2016.  Dkt. No. 1.  On April 25, 2017, Snead filed an amended complaint, which is now the operative pleading.  Dkt. No. 19 (Compl.).  Snead asserts claims for unlawful stop and search, false arrest, malicious prosecution, denial of a right to fair trial, failure to intervene, *Monell* liability, supervisory liability, and bias-based profiling. All but the last claim are rooted in a federal statute, 42 U.S.C. § 1983.  She named the following Defendants: The City of New York, Police Officer Gregory LoBianco, Police Officer Richard Hanson, Sergeant Asa Barnes, and seven John and Jane Does.  *Id.*  On May 19, 2017, Defendants filed an answer.  Dkt. No. 24.

The parties have now cross-moved for summary judgment on various claims as to various defendants and the motions are now fully briefed.  *See* Dkt. Nos. 129-142.  In Snead's summary-judgment briefing, she "discontinue[d] her evidence fabrication claims against defendants Barnes and Hanson and her malicious prosecution claim against defendant Hanson, along with her *Monell* claim."  Pl. Br. in Opp., Dkt. No. 135, at 16.  These claims are therefore dismissed with

2

prejudice.

## II.    LEGAL STANDARD

"Summary judgment is appropriate when the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Smith v. Cty. of Suffolk*, 776 F.3d 114, 121 (2d Cir. 2015).  Summary judgment may not be granted unless all of the submissions taken together "show[] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The moving party bears the burden of demonstrating the absence of a material factual question, and in making this determination, the Court must view all facts in the light most favorable to the non-moving party.  *See Eastman Kodak Co. v. Image Techn. Servs., Inc.*, 504 U.S. 451, 456 (1992); *Gemmink v. Jay Peak Inc.*, 807 F.3d. 46, 48 (2d Cir. 2015).  In evaluating cross-motions for summary judgment, each motion must be examined "on its own merits," and "all reasonable inferences must be drawn against the party whose motion is under consideration." *Vugo, Inc. v. City of New York*, 931 F.3d 42, 48 (2d Cir. 2019).

Once the moving party has asserted facts showing that the non-movant's claims cannot be sustained, "the party opposing summary judgment may not merely rest on the allegations or denials of his pleading; rather his response, by affidavits or otherwise as provided in the Rule, must set forth specific facts demonstrating that there is a genuine issue for trial." *Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009).  "[C]onclusory statements, conjecture, and inadmissible evidence are insufficient to defeat summary judgment." *Ridinger v. Dow Jones & Co. Inc.*, 651 F.3d 309, 317 (2d Cir. 2011).  The same is true for "mere speculation or conjecture as to the true nature of the facts." *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010).

Only disputes over material facts will preclude the entry of summary judgment. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986). "An issue of fact is genuine and

material if the evidence is such that a reasonable jury could return a verdict for the nonmoving

party." *Cross Commerce Media, Inc. v. Collective, Inc.*, 841 F.3d 155, 162 (2d Cir. 2016).  "On

a motion for summary judgment, a fact is material if it might affect the outcome of the suit under

the governing law." *Royal Crown Day Care LLC v. Dep't of Health & Mental Hygiene*, 746

F.3d 538, 544 (2d Cir. 2014) (internal quotation marks omitted).

### III.   SNEAD IS NOT ENTITLED TO SUMMARY JUDGMENT ON HER FAIR-TRIAL CLAIM

Snead moves for summary judgment on just one of her claims: failure to provide a fair

trial due to fabrication of evidence.  Snead argues that Officer LoBianco misrepresented in a

criminal complaint that he saw Snead drinking an alcoholic beverage.  Because there are genuine

disputes as to several relevant facts underlying this claim, the Court denies Snead's request for

summary judgment.

#### A.   The Five-Factor Test

Fabrication of evidence by state officials in criminal proceedings can violate a

defendant's constitutional right to a fair trial.  But fabrication alone is insufficient to constitute a

constitutional violation.  The Second Circuit has explained that "fair trial claims based on

fabrication of information [are restricted] to those cases in which an (1) investigating official (2)

fabricates information (3) that is likely to influence a jury's verdict, (4) forwards that information

to prosecutors, and (5) the plaintiff suffers a deprivation of life, liberty, or property as a result."

*Garnett v. Undercover Officer C0039*, 838 F.3d 265, 279 (2d Cir. 2016).  Plaintiffs bringing fair-

trial claims based on fabrication of evidence must satisfy all five factors.  To be clear, however, a

plaintiff need not have proceeded to trial in order to have an actionable § 1983 claim based on

the denial of this right.  *See Ricciuti*, 124 F.3d at 127 (considering § 1983 claim for right to a fair

trial where the plaintiffs' criminal charges were dismissed pre-trial); *Canario v. City of New*

*York*, 2006 WL 2015651, at *1 (S.D.N.Y. July 12, 2006) (same).  Rather, the allegedly false

information must be material such that it "would likely influence the jury *if it* arrived at a jury."

*Garnett v. Undercover Officer C0039*, 2015 WL 1539044, at *8 (S.D.N.Y. 2015) (emphasis

added).

There is no genuine dispute here that the first factor is met: Officer LoBianco is an

investigating official.  The second factor, the fabrication of information, even reading the facts

most favorably to Defendants, is also met.  In the criminal complaint, LoBianco stated that "[he]

observed the defendant, in a public place, on the sidewalk, drinking from an open Bud Light

Rasberita can, which contained an alcoholic beverage."  Harvis Decl. Ex. 2.  LoBianco later

testified that this was not true.  In a deposition, he stated that he "did not" "see [Snead] drinking

from the can."  LoBianco Dep. 43:18-21.  After being read back his criminal complaint,

LoBianco confirmed that "[he] had not seen [Snead] drinking from the can."  *Id.* 271:2-25.  And

he said he was "not sure" why he "sign[ed] something under penalty of perjury saying that [he]

had seen [Snead] drinking it when [he] didn't."  *Id.*  LoBianco thus clearly admitted that his

representation in the complaint was untruthful.  And LoBianco does not now contest this

testimony or argue that his statement was truthful.  The Court therefore concludes that no

reasonable juror could find that LoBianco did not fabricate this information, satisfying the

second factor.  The fourth factor is also met, as LoBianco forwarded this information to

prosecutors and attested to the information by signing the complaint.  *See* Pl. Reply to Def.

Statement ¶ 17 (parties agree that "[t]he morning following plaintiff's arrest, Officer LoBianco

spoke with the prosecutor regarding the facts of plaintiff's arrest").

Snead's summary-judgment motion hits a snag, however, on the third and fifth factors.

LoBianco's fabrication is not likely to influence a jury's verdict.  And there is a genuine dispute

as to whether the fabrication deprived Snead of her liberty.

**B.  Snead Has Not Shown That the Fabrication is Likely to Influence a Jury's Verdict**

The third requirement for fabrication-of-evidence claims is that the fabrication be "likely to influence a jury's decision." *Jordan v. City of New York*, 2017 WL 3106453, at *3 (S.D.N.Y. July 17, 2017) (internal quotation marks and citation omitted).  This element "is properly understood to require a showing of the materiality of the false information presented—that the information would likely influence the jury if it arrived at a jury." *Id.*

The Court begins with the statute under which Snead was charged, the City's open-container law.  The New York City Administrative Code provides that "[n]o person shall drink or consume an alcoholic beverage, or possess, with intent to drink or consume, an open container containing an alcoholic beverage in any public place except at a block party, feast or similar function for which a permit has been obtained."  N.Y.C. Admin. Code § 10-125(b).

The parties agree, and there is no evidence to contradict, that Snead was "in [a] public place" and was not at a "block party, feast or similar function for which a permit has been obtained." *Id.*  Whether Snead violated the statute, therefore, comes down to whether she (1) "dr[a]nk or consume[d] an alcoholic beverage" *or* (2) "possess[ed], with intent to drink or consume, an open container containing an alcoholic beverage." *Id*.  The statute's *actus reus* is disjunctive; either consumption or possession is sufficient.

Snead argues that "[t]here is simply no fact more vital to adjudicating criminal liability for the violation of drinking in public than whether the suspect was in fact drinking . . . for this reason alone, LoBianco's acknowledged fabrication was *per se* likely to influence a reasonable trier of fact weighing the guilt of plaintiff Lisa Snead as to this violation."  Snead Br., Dkt. No. 126, at 5.  LoBianco however contends that "[p]rosecution for violation of [this statute] does **not**

require evidence of drinking alcohol from an open container in public."  Def. Br. in Opp., Dkt. No. 133, at 4.  He is correct on this point; as noted above, the statute is disjunctive, and can be violated by possession alone.  And LoBianco claims that possession is undisputed here.  He states "there was ample evidence, observed by all three defendant Officers, that plaintiff possessed an open container of alcohol in a public place."  *Id.* at 5.  Therefore, the "plaintiff cannot show that her prosecution under this statute would have been any different without Officer LoBianco's statement in the criminal complaint that he had observed plaintiff 'drinking' alcohol in public."  *Id.*  In other words, if possession is established, a jury could have convicted Snead irrespective of LoBianco's fabrication, and the fabrication was thus not likely to affect the jury.

All three Officers testified to observing Snead with an open container.  LoBianco testified that the Officers saw Snead from their vehicle with an open container and that she threw the container on the ground when they approached her.  LoBianco Dep. 25:23-25 ("I observed [Snead] with the open container of alcohol in her hand."); 111:2-6, 18-20.  Hanson likewise testified that he "observed [Snead] with an open container in her possession."  Hanson Dep. 32:8-9.  And he stated that he "remember[ed] seeing the can . . . After it was on the ground."  *Id.* 43:16-19.  He later summarized his observations: he saw Snead with the open container while in the police vehicle, but when he approached her, he saw nothing in her hand and instead observed a can on the ground.  *Id.* 61:3-20.  Barnes also stated that when the Officers "pulled the vehicle up next to Lisa Snead . . . She had an open container of alcohol in her hand."  Barnes Dep. 72:15-18.  And he agreed that "when [he] approached [Snead] . . . [s]he threw the can of alcohol . . . [d]own the sidewalk on the street."  Barnes Dep. 73:13-16.

Snead avers that she did not possess alcohol.  In her response to Defendants' Rule 56.1

statement, she states "Plaintiff did not possess alcohol."  Pl. Ctr. ¶ 14; *see also id.* ¶ 5 ("Snead

did not possess alcohol and [LoBianco's] observation could not have happened."); ¶ 9 ("plaintiff

did not possess alcohol").  But at summary judgment, an averment is not taken as true; as the

movant, Snead must support her claim with specific facts in the record, not mere conclusions.

*See Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009) ("When a motion for summary judgment

is properly supported by documents or other evidentiary materials, the party opposing summary

judgment may not merely rest on the allegations or denials of his pleading; rather his response,

by affidavits or otherwise as provided in the Rule, must set forth 'specific facts' demonstrating

that there is 'a genuine issue for trial.'") (quoting Fed. R. Civ. P. 56(e)); *ITC Ltd. v. Punchgini,*

*Inc.*, 482 F.3d 135, 151 (2d Cir. 2007) ("conclusory statements, conjecture, and inadmissible

evidence are insufficient to defeat summary judgment").

Given that these conclusory statements are insufficient to meet her burden, the Court

reviews Snead's record citations in support of this proposition.  *See Congregation Rabbinical*

*Coll. of Tartikov, Inc. v. Vill. of Pomona*, 138 F. Supp. 3d 352, 394 (S.D.N.Y. 2015), *aff'd*, 945

F.3d 83 (2d Cir. 2019) ("[A] Rule 56.1 statement is not itself a vehicle for making factual

assertions that are otherwise unsupported in the record . . . where the record does not support the

assertions in a Local 56.1 statement, those assertions are disregarded and the record reviewed

independently.") (internal quotation marks, citation, and alterations omitted).  None of Snead's

record evidence supports her claim.  First, Snead points to her own testimony.  But Snead never

testified that she did not possess an open container on the night in question.  Instead, she testified

that "at any time during that day on June 24th, 2015, [she did not] have any type of alcoholic

beverage *to drink*."  Snead Dep. 52:10-13 (emphasis added).  And she testified that "[w]ithin 24

hours before [her] arrest, [she did not] *consume* any alcoholic beverages."  *Id.* 148:2-4 (emphasis

added).  These statements speak only to consumption, not possession.  Second, she cites

testimony from a coworker who was walking with her when they were approached by Officer

LoBianco.  The coworker stated that as she and Snead were walking, Snead "had something in

her hand" and "was drinking something that was in a bag."  Bryant-Forbes Dep. 45:4-5.  She

stated that the bag was brown in color.  *Id.* 45:8-9.  But the coworker "ha[d] no idea" whether "it

was an alcoholic beverage."  *Id.* 45:13-14.  This testimony also does not confirm Snead's claim.

More helpful to Snead is Bryant-Forbes' testimony that "the police just stopped us for nothing."

*Id.* 46:18.  But given the substantial evidence to the contrary, and the Court's obligation to read

the record most favorably to LoBianco, Snead has failed to establish that she did not possess

alcohol.  At the very least, Snead's possession is in dispute.

The Court therefore cannot determine, as a matter of law, that evidence about Snead

*consuming* alcohol, like LoBianco's fabrication, is *likely* to affect a jury's consideration of

whether Snead is guilty of the offense.  On this record, a jury could convict Snead on possession

alone, and LoBianco's fabrication may have little bearing.  Snead has thus not met her burden to

show that this factor favors summary judgment.  *See* Fed. R. Civ. P. 56(a) ("The court shall grant

summary judgment if . . . the movant is entitled to judgment as a matter of law."); *Cruden v.

Bank of New York*, 957 F.2d 961, 975 (2d Cir. 1992) ("Only when no reasonable trier of fact

could find in favor of the nonmoving party should summary judgment be granted.").

### C.   Snead Has Not Shown That LoBianco's Fabrication Deprived Her of Liberty

Snead's failure to satisfy the third requirement for her fabrication claim is sufficient to

deny her summary-judgment motion.  But the Court also reviews the final requirement for such

claims: the plaintiff must "suffer[] a deprivation of life, liberty, or property" as a result of the

fabrication.  *Garnett*, 838 F.3d at 279.  This factor boils down to causation; the defendant's

fabrication must *cause* plaintiff to be deprived of her life, liberty, or property.  *See Zahrey v.*

*Coffey*, 221 F.3d 342, 348, 355 (2d Cir. 2000) ("The manufacture of false evidence, in and of itself . . . does not impair anyone's liberty, and therefore does not impair anyone's constitutional right . . . the deprivation of liberty of which [plaintiff] complains [must] be shown to be the result of [the defendant's] fabrication of evidence.") (internal quotation marks omitted).

    Snead suffered a deprivation of liberty.  There is no dispute that she was arrested and held in jail overnight.  *See, e.g.*, *Long v. New York City*, 2016 WL 4203545, at *5 (S.D.N.Y. Aug. 8, 2016) ("Plaintiff's detention, albeit brief, satisfies the requirement that there be a deprivation of liberty."); *Dowling v. City of N.Y.*, 2013 WL 5502867, at *7 (E.D.N.Y. Sept. 30, 2013) ("Plaintiff's twenty-four hours in jail, culminating . . . in adjournment in contemplation of dismissal . . . warrant[s] a finding that he was deprived of his liberty."); *Henry v. City of N.Y.*, 2003 WL 22077469, at *4 (S.D.N.Y. Sept. 8, 2003) (finding a deprivation of liberty because plaintiff was briefly incarcerated after his arrest).  And Snead was required to appear at multiple court appearances relating to her criminal charges, which is also sufficient to constitute deprivation of liberty.  *See Swartz v. Insogna*, 704 F.3d 105, 112 (2d Cir. 2013) (noting that the Second Circuit has "consistently held that a post-arraignment defendant who is "obligated to appear in court in connection with [criminal] charges whenever his attendance [i]s required" suffers a deprivation of liberty."); *Jocks v. Tavernier*, 316 F.3d 128, 136 (2d Cir. 2003); *Rohman v. New York City Transit Authority*, 215 F.3d 208, 215–16 (2d Cir. 2000).

    But a deprivation is not enough for § 1983 liability.  Snead must show a *causal connection* between the fabrication and the deprivation.  Courts have found this requirement satisfied where plaintiffs have shown that they would not have been charged with a particular crime absent the fabrication.  *See Ricciuti*, 124 F.3d at 126-27 (plaintiffs alleged that fabrication caused them to be charged with a more serious crime, felony assault in the second degree, rather

than misdemeanor assault, and caused the prosecutors to add another charge); *cf.* Torres v. City of New York, 2017 WL 4325822, at *5 (E.D.N.Y. Sept. 27, 2017) (finding a lack of causation in part because "nothing in the criminal complaint" supported "even an inference that [the officer's fabrication] factored into the . . . decision to bring charges against plaintiffs"). Courts have also found the causation requirement satisfied where the fabrication resulted in a longer period of detention. *See, e.g.*, *Hoyos v. City of New York*, 999 F. Supp. 2d 375, 394 (E.D.N.Y. 2013).

On this record, the Court cannot determine whether LoBianco's fabrication affected the prosecutor's decision to charge Snead under this statute. To be sure, it is possible that Snead would not have been charged without LoBianco's sworn statement that he saw her drinking alcohol. *See Garnett v. Undercover Officer C0039*, 2015 WL 1539044, at *6 (S.D.N.Y. Apr. 6, 2015), *aff'd*, 838 F.3d 265 (2d Cir. 2016) ("In this case, perhaps Mr. Garnett would have been set free immediately if the prosecutor did not have the evidence of the acts and statement that UC 39 attributed to him to support the prosecution."). But it is also possible that, given the evidence of possession, Snead would have been charged anyway and subject to the same deprivations of liberty. These are questions for the jury, not the Court on summary judgment. Snead has therefore also not met her summary-judgment burden as to this element of the five-factor test.

* * * * *

Snead argues that the Court should grant her summary judgment because she has put forward undisputed evidence that an officer fabricated evidence against her. But that is not enough. On this posture, Snead is also required to put forward undisputed facts showing that the fabrication is likely to influence a jury's verdict and that it deprived Snead of her liberty. She has done neither, so her request for summary judgment on this claim is denied.[1]

---

[1] Because the Court denies Snead's claim for summary judgment on these grounds, it does not address LoBianco's alterative theory that the existence of probable cause negates his liability. But the Court notes that the Second

### IV.   HANSON AND BARNES ARE NOT ENTITLED TO SUMMARY JUDGMENT ON SNEAD'S UNLAWFUL-SEARCH CLAIM

Officer Hanson and Sergeant Barnes move for summary judgment on Snead's claim for unlawful search.  The Fourth Amendment protects "[t]he right of the people to be secure in their person, houses, papers and effects against unreasonable searches and seizures."  U.S. CONST. AMEND. IV.  "Whether a search is reasonable is determined by assessing, on the one hand, the degree to which it intrudes upon an individual's privacy and, on the other, the degree to which it is needed for the promotion of legitimate government interests."  *United States v. Quinones*, 457 Fed. Appx. 68, 69 (2d Cir. 2012) (internal quotation marks and citation omitted).

To succeed on a claim for unlawful search, a plaintiff must actually have been searched. *See D'Angelo v. Kirschner*, 288 F. App'x 724, 726 (2d Cir. 2008).  Hanson and Barnes premise their summary-judgment motion on the theory that Snead was not searched.  However, this fact is in dispute.  Indeed, the Officers themselves testified that Snead was searched.  LoBianco testified that Snead "was . . . searched by one of the officers" at the police station.  LoBianco Dep. 142:2-25.  He provided a lengthy description of the search.  He stated "I remember her in the precinct still yelling and screaming as she was being searched by one of the officers."  *Id.* And he said "it was a female officer [who searched her], because that's the procedure to have a female officer search a female prisoner."  *Id.*  Officer Hanson was also asked "Was Lisa Snead searched at the desk [in the police precinct]?"  Hanson Dep. 131:14.  He responded "I believe so, yes – yes, she would have been."  *Id.* 131:14-16.  However, he stated that he did not participate in the search.  *Id.* 131:17-18.  Hanson also stated that it was "protocol to search someone before they are put in a police car," as Snead was, but he did not recall if he "observe[d] that happen"

---

Circuit has, time and again, rejected this argument.  *See Garnett*, 838 F.3d at 277-78; *Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 130 (2d Cir. 1997) ("No arrest, no matter how lawful or objectively reasonable, gives an arresting officer or his fellow officers license to deliberately manufacture false evidence against an arrestee.").

and stated "[the search] was not done by me, though."  Hanson Dep. 131:3-8.

Despite this evidence, Hanson and Barnes argue that the Court should grant them judgment as a matter of law because Snead purportedly admitted she was not searched.  When Snead was asked "[b]efore you were placed in the police vehicle, were you searched?", she answered no.  Snead Dep. 65:21-23.  And when Snead was asked "before you were placed in the cell, were you searched?", she again answered no.  *Id.* 65:18-20.  Defendants contend that, for purposes of summary judgment, the Court should look *only* at Snead's testimony, and not that of Officers LoBianco and Hanson.  They argue that Snead cannot ask the Court to ignore her own testimony and credit the testimony of police officers whom she, for most other respects, alleges are misrepresenting the events surrounding her arrest.

In support of this approach to summary judgment, Defendants point to a decision from the Eleventh Circuit, *Evans v. Stephens*, 407 F.3d 1272 (11th Cir. 2005) (en banc).  There, the Eleventh Circuit held that "[w]hen the nonmovant [on summary judgment] has testified to events, we do not (as urged by Plaintiffs' counsel) pick and choose bits from other witnesses' essentially incompatible accounts (in effect, declining to credit some of the nonmovant's own testimony) and then string together those portions of the record to form the story that we deem most helpful to the nonmovant."  *Id.* at 1278.  The Eleventh Circuit explained that "the courts owe a nonmovant no duty to disbelieve his sworn testimony which he chooses to submit for use in the case to be decided."  *Id.*  Two Courts in this Circuit have adopted this approach.  One District Court rejected a non-movant's "judicial cut-and-paste edition of the record, [in which] the Court would have to discredit a plaintiff's own sworn account of critical facts and selectively substitute contrary testimony of defendants' witnesses to sustain the plaintiff's theory of recovery."  *Berk v. St. Vincent's Hosp. & Med. Ctr.*, 380 F. Supp. 2d 334, 345 (S.D.N.Y. 2005).

Another District Court reached the same conclusion, rejecting this "hybrid approach to summary judgment." *Krynski v. Chase*, 707 F. Supp. 2d 318, 327 (E.D.N.Y. 2009).

The Court rejects this argument. To start, these cases are inapt here, because Snead's own testimony does not directly contradict her theory of recovery. Snead's testimony says nothing about whether she was searched *after* she was placed in the cell. Moreover, in her deposition, Snead was not asked whether she was searched *at all*. The specific, temporal questions she was asked do not cover the entirety of alleged events on June 24 and 25, 2015. These facts alone separate this case from *Evans* and the two district court opinions discussed above. In *Krynski*, for example, the non-movant asked the court to ignore his *entirely* "contrary description" of the events underpinning his claim and attempted "to create triable issues of fact by alternating between [these] competing versions." 707 F.Supp.2d at 327. That is not the case here. In denying Defendants summary judgment, the Court need not alternate between Snead's and Defendants' version of events, as even Snead's deposition raises a triable issue of fact as to this claim.

Even if the Court were to read Snead's testimony less generously to her—the *opposite* of how the Court should treat evidence proffered by the non-movant on summary judgment— Defendants' argument would still fail. Defendants point to no authority binding on this Court that compels their approach to summary judgment. To the contrary, the Supreme Court has instructed that, on summary judgment, the Court must view *all* evidence in the light most favorable to the nonmoving party and draw *all* reasonable inferences in the non-moving party's favor. *Liberty Lobby, Inc.*, 477 U.S. at 255; *see also Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (court must review the record "taken as a whole"); *Anderson v. Consolidated Rail Corp.*, 297 F.3d 242, 247 (3d Cir. 2002) ("the non-moving party

is entitled to all reasonable inferences and the record is construed in the light most favorable to that party"). The Supreme Court's approach thus suggests that the Court must consider any testimony—whether from the plaintiff, the defendant, or a non-party—that forms the version of events most favorable to the non-moving party. Yet the Eleventh Circuit's rule limits the Court's review to only some of the evidence in the record, and prohibits the Court from reviewing evidence most favorable to the non-movant. Indeed, this rule would effectively ask the Court to ignore the movant's own sworn testimony. The Court finds no support for this approach in binding precedent. No other Court of Appeal has endorsed the Eleventh Circuit's rule, and the Court is not persuaded to do so here.

In short, Officers LoBianco and Hanson testified extensively and repeatedly that Snead was in fact searched, and Snead's testimony does not contradict that evidence. Given the conflicting factual record on this point, there is a genuine dispute whether Snead was searched. The Court thus denies Hanson and Barnes' request for summary judgment on this claim.

## V. THE COURT DENIES SUMMARY JUDGMENT ON SNEAD'S UNLAWFUL-STOP AND FALSE-ARREST CLAIMS

Defendants Hanson and Barnes also move for summary judgment on Snead's unlawful stop and arrest claims, arguing that they were not personally involved in either Snead's stop or arrest. *See* Def. Br. at 7 ("plaintiff has made no allegation, nor adduced any evidence, that Officer Hanson or Sergeant Barnes had any personal involvement in the stop or arrest of plaintiff."). Because there is conflicting testimony as to their level of involvement in these events, the Court rejects their argument.

"It is well settled in this Circuit that 'personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.'" *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (quoting *Moffitt v. Town of Brookfield*, 950 F.2d 880, 886

(2d Cir. 1991)).  An officer's mere presence at the scene of a stop or arrest generally does not

constitute sufficient personal involvement for § 1983 liability.  *See, e.g., Rodriguez v. City of*

*New York*, 291 F. Supp. 3d 396, 410 (S.D.N.Y. 2018); *Minter v. Cty. of Westchester*, 2011 WL

856269, at *7 (S.D.N.Y. Jan. 20, 2011) (dismissing false arrest claim against certain officers

because they "did not enter the home until the SWAT team had secured the premises, did not

touch [the plaintiff] in any way, . . . [or were not present because they] had the day off");

*Howard v. Schoberle*, 907 F. Supp. 671, 682 (S.D.N.Y. 1995) (holding an officer's "presence on

the search team, standing alone, is an insufficient basis on which to find that she personally

participated in the allegedly unconstitutional arrests"); *Munoz v. City of N.Y.*, 2008 WL 464236,

at *5 (S.D.N.Y. Feb. 20, 2008) (holding that officers who were merely present at the place of

arrest were not personally involved).

Defendants quote snippets of Snead's testimony to argue that only LoBianco was

personally involved in Snead's stop and arrest.  For example, Snead at times suggested that only

two officers were present, and one of them was seated in the police vehicle for most of the

incident.  She stated that when she was placed under arrest and walking to the police vehicle, she

"recall[ed]" there being two officers "at the scene."  Snead Dep. 48:1-3.  Moreover, Snead

testified that "aside from the officer that placed the handcuffs on [her]," LoBianco, "[no] other

officer ma[d]e any physical contact with [her]."  Snead Dep. 56:3-9.  But her testimony on these

points is far from clear.  Snead also testified that she observed *three* police officers.  For

example, she testified that when LoBianco "proceeded to arrest [her]," she saw two other police

officers at the scene.  *Id.* 33:21-25.  And she testified that "when they placed me in the car, there

was an officer sitting next to me, and there could have been two in the front."  *Id.* 50:1-5.

Moreover, as explained, the Court does not limit its review to just Snead's testimony.

16

Testimony from all three Officers provides ample evidence that (1) three officers were on the scene and (2) both Hanson and Barnes were present and personally involved in Snead's stop and the arrest.  With respect to the stop, each Officer testified that he individually observed Snead's possession of an open container and thus contributed to the group's decision to stop and exit their vehicle.  LoBianco testified that "[he] observed [Snead] with the open container of alcohol in her hand . . . [the Officers] popped a U-turn . . . [and then] me and Officer Hanson had approached her out of the car and had engaged the individual."  LoBianco Dep. 25:16-26:5.  Hanson stated that he also observed Snead with an open container in her hand, and only then did the Officers exit the car.  Hanson Dep. 37:5-11.  And Barnes also saw Snead "drinking an open container of alcohol."  Barnes Dep. 53:19-54:5.  This testimony is sufficient for a jury to conclude that all three individuals were personally involved in the stop.

The same is true for the arrest.  Hanson stated that, after he exited the car, he "walk[ed] to [Snead] with Lobianco" and "was approaching" Snead.  *Id.* 38:7-24.  And he said he "was close enough to hear if there was a conversation" between LoBianco and Snead.  *Id.* 40:2-3.  He later testified that when LoBianco began to arrest Snead, he "remember[s] coming over and helping Officer Lobianco get both of her hands behind her back."  *Id.* 101:20-22.  He then stated that Barnes "was with us, as well."  *Id*. 101:23-24.  And he said "[we] all," meaning LoBianco, Barnes, and himself, "attempted to – well, we all helped get her hands behind her back to place her into custody."  *Id.* 102:5-7.  Barnes agreed that all three Officers exited the vehicle and approached Snead.  Barnes Dep. 73:3, 20-24.  LoBianco also testified to Hanson's physical involvement in the arrest.  LoBianco Dep. 107:23-108:1; 126:5-11.  He stated that he "believe[d] [putting Snead into the police car] was a joint effort and [he] [did not] believe one set person did it."  *Id.* 140:19-25.  And Bryant-Forbes testified that "three [officers were] surrounding [Snead]"

when placing her under arrest.  Bryant-Forbes Dep. 52:16-20.

In short, Hanson and Barnes have not met their burden to show that they were not personally involved in Snead's stop and arrest.  Indeed, their testimony and testimony from a witness suggests the opposite.  "It is for a jury to decide if these facts give rise to personal involvement sufficient for liability to attach under § 1983."  *Rodriguez v. City of New York*, 291 F. Supp. 3d 396, 411 (S.D.N.Y. 2018); *see also Williams v. Smith*, 781 F.2d 319, 323 (2d Cir. 1986) (holding that personal involvement was a question of fact for the jury).

## VI.   THE COURT DENIES SUMMARY JUDGMENT AS TO SNEAD'S FAILURE-TO-INTERVENE CLAIM

Officer Hanson and Sergeant Barnes also move for summary judgment on Snead's failure-to-intervene claim.  Because this claim also turns on disputed facts, the Court rejects their request.

Law enforcement officers have an affirmative duty to intervene to prevent fellow officers from infringing on citizens' constitutional rights.  *Guerrero v. City of N.Y.*, No. 16-cv-516 (JPO), 2017 WL 2271467, at *3 (S.D.N.Y. May 23, 2017).  "It is widely recognized that all law enforcement officials have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence."  *Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir. 1994).  "Liability may attach only when (1) the officer had a realistic opportunity to intervene and prevent the harm; (2) a reasonable person in the officer's position would know that the victim's constitutional rights were being violated; and (3) the officer does not take reasonable steps to intervene."  *Jean-Laurent v. Wilkinson*, 540 F. Supp. 2d 501, 512 (S.D.N.Y. 2008) (citing *O'Neill v. Krzeminski*, 839 F.2d 9, 11-12 (2d Cir. 1988)), aff'd sub nom. *Jean-Laurent v. Wilkerson*, 461 Fed. Appx. 18 (2d Cir. 2012).

Officers Hanson and Barnes make a now-familiar argument as to these claims: they were

not personally involved in the alleged constitutional violations, and therefore they had no

realistic opportunity to intervene.  As discussed, however, the extent of their involvement in

Snead's stop and arrest is disputed.  Indeed, they themselves testified to being mere feet away

from Snead when LoBianco arrested her.  This is true even accepting Snead's testimony that one

of the Officers sat in the police vehicle for most of the incident; by all accounts; the vehicle was

close to Snead.  *See, e.g.*, LoBianco Dep. 140:11-18 (describing this distance as "[a] few feet.").

The Officers certainly have not presented undisputed evidence such that *no* reasonable jury could

conclude that had a realistic opportunity to intervene in LoBianco's alleged constitutional

violations.  *See Anderson*, 477 U.S. at 248 (holding that summary judgment should be denied

unless no "reasonable jury could return a verdict for the nonmoving party").  The Court therefore

denies them summary judgment on this claim.

### VII.    THE COURT DENIES SUMMARY JUDGMENT AS TO SNEAD'S SUPERVISORY-LIABILTY CLAIM

Sergeant Barnes next moves for summary judgment on Snead's supervisory liability

claim.  Because several facts underlying this theory are in dispute, the Court denies his request.

Supervisory liability under § 1983 is narrowly circumscribed.  "[T]he doctrine of

respondent superior . . . does not suffice to impose liability for damages under section 1983 on a

defendant acting in a supervisory capacity."  *Hayut v. State Univ. of N.Y.*, 352 F.3d 733, 753 (2d

Cir. 2003).  Indeed, the imposition of vicarious liability is "incompatible with § 1983's causation

requirement."  *Reynolds v. Giuliani*, 506 F.3d 183, 190–191 (2d Cir. 2007); *accord City of

Canton v. Harris*, 489 U.S. 378, 385 (1989).  To avoid holding a supervisor liable solely for a

subordinate's violations, therefore, courts must apply "rigorous standards of culpability and

causation."  *Jeffes v. Barnes*, 208 F.3d 49, 61 (2d Cir. 2000) (quoting *Bd. of Cty. Comm'rs v.

Brown*, 520 U.S. 397, 405 (1997)).  It is "well settled" that "personal involvement of defendants

in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983."

*Farrell v. Burke*, 449 F.3d 470, 484 (2d Cir. 2006).

A plaintiff may establish a supervisor's personal involvement by showing that the supervisor:

> (1) directly participated in the violation, (2) failed to remedy the violation after being informed of it by report or appeal, (3) created a policy or custom under which the violation occurred, (4) was grossly negligent in supervising subordinates who committed the violation, or (5) was deliberately indifferent to the rights of others by failing to act on information that constitutional rights were being violated.

*Iqbal v. Hasty*, 490 F.3d 143, 152–153 (2d Cir. 2007) (citation omitted).

Here, the parties agree that Sergeant Barnes was Officers LoBianco and Hanson's supervisor. *See, e.g.*, Def. Br. in Opp. at 1–2 ("On the evening of June 24, 2015, NYPD Officers LoBianco and Hanson . . . were patrolling in an unmarked car together *with their supervisor*, Impact Sergeant Barnes.") (emphasis added). Read in the light most favorable to Snead, the record shows that Hanson participated in the violations alleged here. As noted, Barnes agreed that all three Officers exited the vehicle and approached Snead. Barnes Dep. 73:3, 20-24. LoBianco stated that Barnes "was with us, as well." *Id*. 101:23-24. And Hanson and Snead's coworker testified that Barnes involved in the arrest. Hanson Dep. 102:5-7; Bryant-Forbes Dep. 52:16-20. A reasonable jury could conclude that this constitutes "direct[] participat[ion] in the violation" for purposes of supervisory liability. *See Hasty*, 490 F.3d at 152–53. The Court thus denies Sergeant Barnes summary judgment on Snead's claim for supervisory liability.

## VIII.   THE COURT GRANTS DEFENDANTS SUMMARY JUDGMENT AS TO SNEAD'S BIAS-BASED-PROFILING CLAIM

Snead also asserts a claim for bias-based profiling under New York City law. The City Administrative Code prohibits law enforcement officers from "rel[ying] on actual or perceived race, national origin, color, creed, age, alienage or citizenship status, gender, sexual orientation,

disability, or housing status as the determinative factor in initiating law enforcement action against an individual, rather than an individual's behavior or other information or circumstances that links a person or persons to suspected unlawful activity."   N.Y.C. Admin. Code. § 14-151.

Defendants move for summary judgment on this claim, arguing that Snead has put forward no evidence that the Officers profiled her based on an impermissible ground.   As noted, the "party opposing summary judgment may not merely rest on the allegations or denials of his pleading; rather his response, by affidavits or otherwise as provided in the Rule, must set forth 'specific facts' demonstrating that there is 'a genuine issue for trial.'"   *Wright*, 554 F.3d at 227 (quoting Fed. R. Civ. P. 56(e)); *see also Quinn v. Syracuse Model Neighborhood Corp.*, 613 F.2d 438, 445 (2d Cir. 1980) ("The litigant opposing summary judgment, therefore, may not rest upon mere conclusory allegations or denials as a vehicle for obtaining a trial.") (internal quotation marks omitted); *Montessi v. Am. Airlines, Inc.*, 935 F. Supp. 482, 483 (S.D.N.Y. 1996) ("plaintiff's cursory allegations in opposition to the motion are wholly insufficient to establish a genuine issue of material fact to withstand summary judgment.").

Snead has put forward virtually no evidence that the Officers stopped, arrested, or detained her on the basis of a protected class, like race or sex.   She rests only on her statement in her complaint that "[i]n initiating law enforcement action against Ms. Snead based on her actual and/or perceived race and/or color rather than Ms. Snead's behavior . . . the defendant officers engaged in bias-based profiling."   Dkt. No. 19 ¶ 56.   A conclusory allegation that she was profiled based on race is insufficient to survive summary judgment.   For example, in *Cancel v. NYPD Comm'r Raymond Kelly*, the Court dismissed the plaintiff's profiling claim because "he point[ed] to no evidence that might support that claim."   No. 13-cv-6007 (JMF), 2016 WL 590230, at *7 (S.D.N.Y. Feb. 11, 2016).   The same is true here, and the Court grants Defendants

summary judgment on this claim.

IX.   **CONCLUSION**

For the reasons above, the Court DENIES Plaintiff's motion for partial summary judgment.  And the Court GRANTS in part and DENIES in part Defendants' motion for partial summary judgment.  This resolves Dkt. Nos. 125 and 129.

The following of Snead's claims survive summary judgment: (1) fabrication of evidence against all Defendants except Hanson and Barnes; (2) unlawful search against all Defendants, (3) unlawful stop against all Defendants, (4) false arrest against all Defendants, (5) failure to intervene against all Defendants, (6) malicious prosecution against all Defendants except Hanson, and (7) supervisory liability against all Defendants.

No later than two weeks from the date of this Opinion, the parties shall submit a joint letter proposing trial dates and a briefing schedule for the pretrial materials described in Rule 6 of the Court's Individual Practices in Civil Cases.  The parties shall also provide the Court with an estimated length of trial.

SO ORDERED.

Dated: May 28, 2020
New York, New York

_____
ALISON J. NATHAN
United States District Judge